UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 23-102 (RC) |
| | : | |
| ELEANOR HOPPE, | : | Re Document No.:   16 |
| | : | |
| Defendant. | : | |

### MEMORANDUM OPINION

DENYING DEFENDANT'S MOTION FOR RELEASE FROM PRE-TRIAL INCARCERATION

### I. INTRODUCTION

On March 29, 2023, a federal grand jury returned an indictment charging Defendant Eleanor Hoppe with one count of coercion and enticement of a minor, 18 U.S.C. § 2422(b), one count of attempted transportation with intent to engage in criminal sexual activity, *id.* § 2423(a), (e), and one count of distribution of child pornography, *id.* § 2252(a)(2). A magistrate judge ordered that Defendant be detained pending trial. Defendant now moves to vacate the magistrate judge's order and for release from pretrial incarceration. For the reasons described below, Defendant's motion is denied.[1]

### II. BACKGROUND

Defendant currently faces trial on a three count indictment. *See* Indictment, ECF No. 9. Count One alleges that, on February 23 and March 16, 2023, Defendant "attempted to knowingly persuade, induce, entice, and coerce" a minor to engage in sexual activity, in violation of 18

---

[1] The Court grants the parties' various motions for leave to file their papers and supporting exhibits under seal. *See* Def.'s Mot. Leave File Under Seal, ECF No. 16; Def.'s Mot. Leave File Under Seal, ECF No. 19; Gov't's Mot. Leave File Opp'n Def.'s Mot. Release and Exhibit 1 Under Seal, ECF No. 20; Def.'s Mot. Leave File Under Seal, ECF No. 23; Gov't's Mot. Leave File Resp. Under Seal, ECF No. 25.

U.S.C. § 2422(b). *Id.* at 1. Count Two alleges that, on March 16, 2023, Defendant "attempted to knowingly transport [a minor] in interstate commerce with the intent that the [minor] engage" in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) and (e). *Id.* at 2. And Count Three charges Defendant with distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2). *Id.*

Defendant was arrested in March 2023. *See* Arrest Warrant, ECF No. 4. On March 20, Defendant appeared before Magistrate Judge Faruqui, who ordered that Defendant be temporarily detained. Three days later, Defendant orally moved for release from custody. Magistrate Judge Faruqui denied Defendant's motion. Then, on April 18, Magistrate Judge Faruqui issued an order requiring Defendant be detained pending trial. *See* Order of Det. Pending Trial ("Det. Order"), ECF No. 11. The order explained that there was probable cause to believe that Defendant had committed "an offense involving a minor victim under" 18 U.S.C. §§ 2242, 2423, or 2252(a)(2), and that Defendant had failed to rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community." *Id.* at 2. The order also concluded that the Government had presented "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" were Defendant to be released. *Id.*

Defendant now moves to vacate the detention order and for release from pretrial incarceration. *See* Def.'s Mot. Release Pre-Trial Incarceration ("Def.'s Mot.") at 1–2, ECF No. 16-2; *see also* Def.'s Suppl. Mot. Release Pre-Trial Incarceration ("Def.'s Suppl. Mot."), ECF No. 19-1. The Government opposes Defendant's motion, *see* Gov't's Opp'n Release Pretrial Det. ("Gov't's Opp'n"), ECF No. 20-1, and the motion is ripe for review, *see* Def.'s Reply Supp.

Mot. Release ("Def.'s Reply"), ECF No. 23-1; Gov't's Resp. Def.'s Reply ("Gov't's Resp."), ECF No. 25-1.

### III. LEGAL STANDARD

When a magistrate judge detains a person pending trial, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). The D.C. Circuit has "not squarely decided" what the standard of review should be for such proceedings. *See United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every circuit to address the issue has held that a district court's review of a magistrate's detention order is *de novo*. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (collecting cases). Neither party argues otherwise. Accordingly, the Court will review the detention order *de novo*.

### IV. ANALYSIS

Defendant argues she should be released from pretrial detention on multiple grounds. First, she argues that the magistrate erred in finding that she had failed to rebut the presumption that no condition or combination of conditions could reasonably mitigate the threat Defendant would pose to the community were she released pending trial. *See* Def.'s Mot. at 8–10. Second, she argues that the Government failed to prove—by clear and convincing evidence—"that her release would pose an irremediable danger to the public." *See id.* at 8, 10–14. Finally, Defendant describes a number of conditions which, she says, would reasonably assure the community's safety upon her release. *See id.* at 8, 14–15.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act of 1984 "authorizes one of those carefully limited exceptions." *Munchel*, 991 F.3d

at 1279. As relevant here, the Act requires a court to detain a defendant pending trial if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).

The parties do not argue—and the magistrate judge did not find—that Defendant would present a flight risk were she to be released. *See* Det. Order at 2. Thus, to the extent pretrial detention is warranted, it must be based on the threat that Defendant would pose to the broader public. "In assessing whether pretrial detention is warranted for dangerousness," courts consider "(1) 'the nature and circumstances of the offense charged,' (2) 'the weight of the evidence against the [defendant],' (3) 'the history and characteristics of the [defendant],' and (4) 'the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.'" *Munchel*, 991 F.3d at 1279 (quoting 18 U.S.C. § 3142(g)(1)–(4)). The government bears the burden of proving "by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community'" were the defendant to be released. *Id.* (quoting 18 U.S.C. § 3142(f)). The D.C. Circuit has explained that "a defendant's detention based on dangerousness accords with due process only insofar as [her] history, characteristics, and alleged criminal conduct make clear that . . . she poses a concrete, prospective threat to public safety." *Id.* at 1280; *see id.* at 1282 (explaining that government must demonstrate defendant's "identified and articulable threat to the community").

4

That said, if "there is probable cause to believe that the [defendant] committed . . . an offense involving a minor victim under" 18 U.S.C. §§ 2242, 2423, or 2252(a)(2), a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(e)(3)(E). "[T]he defendant bears the burden of production 'to offer some credible evidence'" to rebut the presumption. *United States v. Nickelson*, No. 18-mj-102, 2018 WL 4964506, at *3 (D.D.C. Oct. 15, 2018) (quoting *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)). The defendant may carry this burden "by coming forward with some evidence that [s]he will not . . . endanger the community if released." *Id.* (quoting *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). If the defendant successfully rebuts the presumption, the presumption is "not erased" but rather "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting *Dominguez*, 783 F.2d at 707). And, at all times, "the ultimate burden of persuasion remains with the government." *Nickelson*, 2018 WL 4964506, at *3; *see also Hir*, 517 F.3d at 1086; *Dominguez*, 783 F.2d at 707.

Here, Defendant does not seem to contest that the rebuttable presumption in section 3142(e)(3)(E) has been triggered. *See* Def.'s Mot. at 6 (acknowledging that Defendant "is subject to a rebuttable 'presumption of detention'" (quoting 18 U.S.C. § 3142(e)(3)(E))). But she contends that she successfully rebutted the presumption by producing "affirmative evidence showing that she is not a danger to the community." *Id.* at 9. Specifically, Defendant cites her lack of a prior criminal history, lack of prior drug abuse, educational background, lifelong residency in Virginia, longstanding employment and volunteer activity, former marriage to a federal judge, recent employment at a law firm, serious medical conditions, supportive family,

openness to "all release conditions the court deem[s] appropriate," and proposed third-party custodian as evidence that the community would not face any greater risk. *Id.* The Government counters that none of this evidence suffices to "rebut the presumption in favor of detention under 18 U.S.C. § 3142(e)(3)(E)." Gov't's Opp'n at 4.

Ultimately, the Court need not decide whether Defendant adequately rebutted the section 3142(e)(3)(E) presumption. That is because the Court concludes that, even if Defendant has borne her burden of production with respect to that presumption, the Government has shown by clear and convincing evidence that there is no condition or combination of conditions that will reasonably assure the safety of the community if Defendant were to be released.

### A. Nature and Circumstances of Charged Offenses

As discussed, 18 U.S.C. § 3142 requires courts to assess four factors in determining whether to order a defendant's pretrial detention based on the threat she poses to the community. *Munchel*, 991 F.3d at 1279. The first statutory factor requires the Court to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim." 18 U.S.C. § 3142(g)(1). The crimes with which Defendant is charged fit both of these criteria. *See id.* § 3156(a)(4)(C) (defining "crime of violence" to include any felony under chapter 110 or 117). But more to the point, the charged offenses are extremely serious. Briefly summarized, the Government alleges that Defendant was an active participant on a "fetish website . . . where people meet, discuss, and trade original images depicting the sexual abuse of children and links containing child pornography." Gov't's Mem. Supp. Pretrial Det. ("Gov't's Pretrial Det. Mem.") at 2, 6, ECF No. 6-1. In February 2023, an undercover officer ("UC") began communicating with Defendant through the website. *Id.* at 2. Defendant shared the fact that she was the mother of two young daughters, and the UC told

Defendant that he was the father of an eight-year-old girl. *Id.* at 2, 13. ▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮—and the UC described his own sexual abuse of his supposed daughter. *Id.* at 7–10. Over the course of the next several weeks, Defendant expressed an interest in traveling to Washington, D.C. to sexually abuse the UC's supposed child, explaining that she "wanted to assist the UC in introducing his 8-year-old daughter to further sexual activity." *Id.* at 3. During this time period, Defendant also sent the UC images and a video depicting child pornography. *Id.* at 3–4. Defendant and the UC made plans to meet at a hotel in Virginia "so that [Defendant] and the UC could sexually abuse [his] little girl together." *Id.* at 4–5. Defendant traveled to the hotel, where law enforcement arrested her and discovered "lubricant, silk undergarments, and a pink silk robe" in Defendant's car. *Id.* at 5–6.

Based on this conduct, the Government charged Defendant with three offenses. Two of the charged offenses—violations of 18 U.S.C. § 2422(b) and 18 U.S.C. § 2423 (a) and (e)—carry ten-year mandatory minimums, while Defendant's alleged violation of 18 U.S.C. § 2252(a)(2) mandates a five-year minimum sentence if she is convicted. These required terms of incarceration underscore the seriousness of the charges Defendant faces. *See, e.g., United States v. Blanchard*, No. 18-mj-101, 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018); *United States v. Wilson*, 217 F. Supp. 3d 165, 175 (D.D.C. 2016). That fact, coupled with the gravity of Defendant's charged conduct, convince the Court that the nature and circumstances of the charged offenses heavily favor pretrial detention. *See United States v. Beauchamp-Perez*, 822 F. Supp. 2d 7, 10 (D.D.C. 2011) (finding first section 3142(g) factor favored detention because "the charged offense . . . involved traveling with intent to have sex with a twelve year-old minor victim").

7

## B. Weight of the Evidence Against Defendant

Second, the Court must assess "the weight of the evidence against" Defendant. 18 U.S.C. § 3142(g)(2). The weight of the Government's evidence against Defendant is considerable. The Government's case is supported by messages Defendant exchanged with the UC over the internet, text messages, physical evidence seized from Defendant's car tending to corroborate her intent to sexually abuse the UC's eight-year-old daughter, and Defendant's own statements following her arrest, which included Defendant's admission that she sent images of child pornography to the UC. *See* Gov't's Pretrial Det. Mem. at 2–10; *see also Wilson*, 217 F. Supp. 3d at 176 (finding second section 3142(g) factor favored detention based on similar evidence). The Government also supports its case with evidence tending to confirm Defendant's identification and her activity on the fetish website over multiple years. *See* Gov't's Pretrial Det. Mem. at 6–7. Therefore, the weight of the evidence against Defendant favors detention.

## C. Defendant's Personal History and Characteristics

Third, the Court considers "the history and characteristics of" Defendant. 18 U.S.C. § 3142(g)(3). This assessment includes consideration of Defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *Id.* § 3142(g)(3)(A). Defendant argues that she "has no criminal history and a stable personal background in terms of employment, residence, education, family support, and substance abuse history." Def.'s Mot. at 11. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████

The Court agrees that Defendant's employment and educational history, her long-term residence in Virginia, her family support, and her lack of substance abuse issues weigh in favor of pretrial release. The Court also recognizes—as did the magistrate judge, *see* Det. Order at 5— that Defendant suffers from serious medical conditions. The parties disagree regarding the extent to which Defendant is able to obtain adequate care for these conditions while in custody. Defendant asserts that "she is receiving inadequate treatment at the D.C. Jail" and attaches grievances which, she says, "illustrate the D.C. Jail's repeated failures to perform the most basic task of providing her with her required medicine on a daily basis." *See* Def.'s Mot. at 8; *see also* Ex. 1, Def.'s Mot., ECF No. 16-3; Def.'s Suppl. Mot. at 1–2. The Government responds that "[D]efendant's medical conditions are being addressed at the jail and there is no indication that [the D.C. Department of Corrections] is somehow unequipped to manage her treatment." Gov't's Opp'n at 2. The Government also attaches Defendant's medical records to show that Defendant regularly receives her required medications and has attended multiple medical appointments to address a range of health issues. *See id.* at 2–3; *see also* Ex. 1, Gov't's Opp'n, ECF No. 20-2.

All told, the Court finds that there is evidence to support Defendant's assertion that she has occasionally encountered difficulties regarding her medical care. At the same time, the Court finds that those difficulties are not so severe that they require Defendant's release, ██████████████████████████████████████████████████████████████████ ████████████████████████████████. *See* Gov't's Resp. at 1. In other words, the Court finds that the third factor favors Defendant's release, but not to such an extent that it

comes close to outweighing the other three factors at issue, all of which heavily favor Defendant's continued pretrial detention.[2]

### D. Nature and Seriousness of the Danger Defendant's Release Poses

Finally, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by [Defendant's] release." 18 U.S.C. § 3142(g)(4). This factor swings strongly in favor of detention. For one thing, Defendant is charged with distributing child pornography. As other courts have explained, "the distribution and possession of child pornography constitutes a danger to the community, resulting in physical and mental harm to the children depicted, normalizing such conduct among those sharing this contraband, and creating a market for such contraband, and thereby encouraging the victimization of more children." *Blanchard*, 2018 WL 4964505, at *6 (finding fourth section 3142(g) factor to weigh in favor of detention); *United States v. Galarza*, No. 18-mj-146, 2019 WL 2028710, at *7 (D.D.C. May 8, 2019) (giving similar reasons for finding the same). For another thing, Defendant is not only charged with distributing child pornography—she is also charged with traveling to a hotel in Virginia with the intention of helping someone she believed to be a father sexually abuse his purported eight-year-old daughter. *See Wilson*, 217 F. Supp. 3d at 176 (finding fourth section 3142(g) factor weighed in favor of detention where defendant expressed interest in traveling to

---

[2] During a hearing on Defendant's motion for pretrial release, the Court inquired as to whether Defendant was interested in exploring whether she could be moved to a different custodial facility that would provide her with easier access to better medical care. Defendant was "not opposed" to exploring that possibility, but she primarily insisted that she needed to be able to visit her physicians ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The Court does not believe that the third section 3142(g) factor requires that a defendant be able to access the world-class medical care and facilities of one's choice. At the same time—and as the Court emphasized during the hearing—the Court is highly cognizant of Defendant's severe medical condition and continues to be willing to explore the possibility of moving Defendant to a different custodial facility that would enable her to access better medical care than that which she is currently receiving.

Washington, D.C. to engage in illicit sexual acts with a minor). Given Defendant's conduct—especially the detailed plans she made, and the concrete steps she took, towards attempting to sexually abuse someone she believed to be an eight-year-old girl—the Court finds that Defendant's release would pose a significant danger to a particularly vulnerable segment of the community: children. *See United States v. Burdette*, 813 F. Supp. 2d 1, 4 (D.D.C. 2011).

Defendant resists this conclusion. She argues that there are conditions the Court could impose which would adequately ensure the community's safety. Specifically, she contends that the Court could order that she be placed on house arrest under the care of a third-party custodian—namely, her aunt. *See* Def.'s Mot. at 12, 14. She also suggests that the Court could prohibit her from accessing the internet, prohibit her from attempting to contact "any minor child without pre-approval from the Pretrial Services Office," and require her to wear a GPS-tracking device at all times. *See id.*

The Court is not convinced that these proposed conditions would reasonably mitigate the risk Defendant's release would pose to the community. First, it is generally true that, in cases "involving illicit online conduct involving a minor, a defendant cannot establish that an appropriate third-party custodian exists, since, given the ubiquity of internet-capable devices, ensuring against continuing illegal conduct on release often presents insurmountable challenges." *United States v. Dhavale*, No. 19-mj-92, 2020 WL 1935544, at *5 (D.D.C. Apr. 21, 2020). That principle applies foursquare here. Defendant's papers make clear that her proposed third-party custodian has multiple internet-capable devices in her home, including a computer, an iPad, and a cellphone. *See* Def.'s Suppl. Mot. at 3. Defendant asserts that these devices would be difficult to access for multiple reasons. *See id.* But Defendant does *not* assert that her aunt would be able to monitor her at all hours of the day. Nor is the Court persuaded that Defendant would be

unable to access any other internet-capable devices. Defendant "needs only a hand-held device to access and/or distribute child pornography." *See Galarza*, 2019 WL 2028710, at *6. And because Defendant's aunt cannot provide round-the-clock monitoring, "the absence of such small devices in [Defendant's aunt's] residence cannot be meaningfully verified on a continuous basis." *See id.*

Second, Defendant has already demonstrated that she is both willing and able to devise methods to avoid attempts to monitor her activity. While she has been detained pending trial, Defendant has (1) used other detainees' PIN numbers to place phone calls and (2) falsely informed prison staff that her father and brother are her attorneys-of-record as a means of evading law enforcement's efforts to monitor her telephone calls. *See* Gov't's Suppl. Opp'n Release Pretrial Det. at 1, ECF No. 26. As to the former, the Government produced evidence showing that Defendant expressly stated that she was "going to start calling [her mother] from other people's phones . . . [b]ecause nobody monitors their phones from the prosecution." *Id.* She later told her father the same thing, describing her plan as "[b]rilliant." *Id.* at 2. And regarding the latter, Defendant told her brother that she was "going to list" him and her father as her "attorneys [so that] the calls to [her brother and father] won't be monitored." *Id.* at 3–4. Defendant's conduct suggests that, were she to be released, she would similarly devise methods to curtail efforts to monitor her internet access and communications. This concern is only buttressed by Defendant's familiarity with—and prior use of—end-to-end encryption applications. *See* Gov't's Pretrial Det. Mem. at 2, 4, 7; *cf. Galarza*, 2019 WL 2028710, at *6 (explaining that monitoring defendant's compliance with "release conditions would be difficult" because "the defendant has shown a high level of sophistication with computers and electronic devices").

In conclusion, the Court finds that Defendant presents a significant danger to the community—particularly, children. And, given the risks posed, the Court also finds that no condition or combination of conditions will reasonably keep the community safe were Defendant to be released.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Release from Pre-Trial Incarceration (ECF No. 16) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: April 1, 2024                                                            RUDOLPH CONTRERAS
                                                                                United States District Judge