UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 23-CR-102 (RC) |
| | ) | |
| ELEANOR HOPPE, | ) | |
| | ) | UNDER SEAL |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing in the above-referenced case.* For the reasons set forth below, the government recommends that the Court accept the Rule 11(c)(1)(C) plea and sentence Ms. Hoppe to 135 months of incarceration, followed by ten years of supervised release.

## BACKGROUND

Beginning in late February 2023, a Task Force Officer with the FBI's Washington Field Office was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  In that role, the UC entered a fetish website known to law enforcement as a place where people meet, discuss, and trade original images depicting the sexual abuse of children and links containing child pornography, among other things.

Ms. Hoppe, using the screenname "titotori," initiated a private email chat with the UC via the fetish website. She informed the UC that she was a mother, and that she wanted to chat with the UC about "taboo parenting." The UC responded that he was the father of a young girl. Ms. Hoppe told the UC that she chats on a social media application that uses end-to-end encryption.

*An unredacted version of this memorandum was submitted under seal on April 14, 2025.

The UC then began communicating with her via this encrypted application, on which she used the screenname "tori4fun."

Ms. Hoppe informed the UC that she was a "divorced mom in Charlottesville" with two daughters aged ten and thirteen years old.[1] She stated that she had raised her daughters in a 'taboo lifestyle' and then asked the UC, "What about you? What do you think the next step for you and your daughter will be?"

Throughout her messages with the UC, which continued through March 16, 2023, Ms. Hoppe expressed interest in traveling to Washington D.C. from her home in Charlottesville, Virginia in order to join the UC's sexual abuse of his purported 8-year-old daughter. In particular, Ms. Hoppe repeatedly stated that she wanted to assist the UC introduce his daughter to further sexual activity. For example, on March 8, 2023, she wrote: "a great think [*sic*] to do is to wake her up by trying new things…that hazy/ dreamlike state is perfect to introduce a variety of new things…especially with someone to help with positioning Her body and then you let her fall right back to sleep."

On March 12, 2023, after agreeing upon a particular day for Ms. Hoppe's travel to D.C., the following exchange occurred:

> **UC:**      I can't wait, I'm so excited to have you help out, can't wait to see you with her, I am going to be so fucking hard watching u play with her and you watching me play with her
>
> **HOPPE:**  I can't wait and then of course, putting her to bed and waking her up to do a few extra things will be so fun

---
[1] ████████████████████

Have you explored her ass at all?

Also, has she seen videos of little girls with her dad yet?

**UC:**  Yes, I had a really good link, it had dads and a folder with moms with their kids too.  It was fucking hot.  I should her a while back but the damn link is broken now.  Have u seen anything good

**HOPPE:**  C a couple photos here and there, but nothing really great to be honest

Ms. Hoppe then sent the UC a thirty-second video depicting a small-framed female on a bed. The female, who appears to be a minor, can only be seen from behind, and she is nude from the waist down. An adult male can be seen penetrating the female from behind with his penis.  The female is shown lying face down on a bed with her legs bent and her arms stretched over her head.

Later that day, Ms. Hoppe advised the UC on how to prepare his daughter for Ms. Hoppe's arrival, stating, "if I were you, I'd start building up Thursday telling her that you know it's gonna be super fun we're gonna hang out with an old friend of yours. It's going to be like the best night ever blah blah blah and then once I get there, obviously, it will take a slight turn. I've loved anal for a long time don't worry I can train her well."







████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

On March 16, 2023, using the encrypted application, Ms. Hoppe sent the UC three images that depicted the following:

> (1) a prepubescent minor female, fully nude with her legs spread. An adult man can be seen penetrating the child's vagina with his penis;

> (2) a prepubescent minor female, nude from the waist down. She is lying on her back, with her legs up in the air, while an adult male penetrates the child's vagina with his penis; and

> (3) a prepubescent minor female, fully nude but for a pair of white, thigh-high socks. The child is shown straddling an adult man, whose penis is inserted into the little girl's vagina.

After some additional chat exchanges on March 16, 2023, Ms. Hoppe and the UC agreed that she would travel from her home in Charlottesville, Virginia to a hotel located in Warrenton, Virginia that afternoon. Ms. Hoppe believed that the UC would bring his eight-year-old daughter from Washington, D.C. to the Warrenton hotel so that she and the UC could sexually abuse the child together. In anticipation of the meeting, Ms. Hoppe sent the UC a photograph of a pink silk

robe that she would bring for his daughter, accompanied by the message, "Her big girl robe for tonight."

While en route to Warrenton, Ms. Hoppe sent the UC additional instructions regarding how to prepare for her arrival:

> **HOPPE**: Wake her up and let her take a bath…lots of bubbles and go ahead and make sure you're helpknb [sic] soap both her asshole and pussy in the tub
>
> And then when she gets out of the tub, just let her wrap up in a big towel and try to keep her cozy on the couch or something like that but try not to get her back in clothes. I'll be thee as soon as I can and I'll get naked to.
>
> Remember this is a special daddy daughter night no clothes needed.
>
> **UC**: Yes, I like that plan !!!
>
> **UC**: : )
>
> **HOPPE**: I am so bitter that I'm an hour away. It's unreal.
>
> **UC**: I'm sorry babe
>
> **UC**: Will be worth it
>
> **HOPPE**: Keep me posted and don't forget to wash her pussy to asshole and back again
>
> And get out any toys leave stuff like that that you brought and put it right on the bedside table so she knows that that is what we are here to do
>
> Remember these nights in the hotel with dad or about nothing but having fun feeling good and fucking

Ms. Hoppe was arrested when she arrived at the hotel. During an inventory search of her car, law enforcement found a pink children's bag that contained lubricant, silk undergarments, and the pink silk robe that was depicted in the photo that she had sent to the UC.

Law enforcement seized Ms. Hoppe's iPhone from her car. During a search of the phone, law enforcement located conversations with numerous other individuals on encrypted applications in which she discussed grooming and sexual abusing children. In addition, law enforcement

located 28 images and 7 videos of child sexual abuse material on the device, including material showing the sexual abuse of toddlers and prepubescent children, as well as children being abused while bound and gagged.

## DISCUSSION AND RECOMMENDATION

### I.      Generally Applicable Legal Principles

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in *Blakely v. Washington*, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). *Booker*, 125 S. Ct. at 756.

In post-*Booker* cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing

disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

## II.    The U.S. Sentencing Commission's 2012 and 2021 Reports on Child Pornography Offenses

In 2012 and 2021, the U.S. Sentencing Commission published reports to Congress analyzing federal sentences in both production and non-production child pornography offenses. The Commission found that:

> [T]he current sentencing scheme places a disproportionate emphasis on outmoded measures of culpability regarding offenders' collections (e.g., a 5-level enhancement under §2G2.2(b)(3)(B) for possession of 600 or more images of child pornography, which the typical offender possesses today). At the same time, the current scheme places insufficient emphases on other relevant aspects of collecting behavior as well as on offenders' involvement in child pornography communities and their sexual dangerousness. As a result, the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior. At the same time, it results in unduly lenient ranges for other offenders who engaged in aggravated collecting behaviors not currently addressed in the guideline, who were involved in child pornography communities, or who engaged in sexually dangerous behavior not qualifying for an enhancement in the current penalty scheme.

U.S. Sent'g Comm'n, Report to Congress: Federal Child Pornography Offenses (2012) at 321 (hereinafter 2012 Report).

The Commission recommends three categories of aggravating factors that courts should consider when imposing sentences in non-production cases: content, community, and conduct. The Commission explained that the presence of an aggravating factor from any of these three categories, even without the presence of an aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that the aggravating factor is present in a particular case. 2012 Report at 321. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category. *Id.*

*Content*

This factor directs courts to evaluate the content of an offender's collection and behavior "in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology." 2012 Report at 320.

*Community*

This factor directs the Court to evaluate "the degree of an offender's engagement with other offenders — in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." 2012 Report at 320. Child pornography offenders' involvement in child pornography communities can be classified based on "the different socialization aspects of the activity." The lowest level of such "socialization" involves an offender "acting alone to receive, collect, and share material online, typically through the use of commercial websites offering child pornography for a fee or through anonymous, open P2P technologies. *Id.* at 93. However, "as the offender increases their desire for more specific material, they often begin to reach out and contact other individuals in web-based forums of individuals who share the same interest," which allows

10

"direct communication and trading of images or videos with like-minded peers." *Id.* at 93-94. This socialization validates offenders' behavior and provides encouragement to continue offending. *Id.* at 94.

*Conduct*

The third factor asks courts to assess whether an offender "has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense." 2012 Report at 320. Notably, the Commission recommends that, in addition to criminal offenses, courts consider "non-criminal acts of sexually deviant behavior" because such behavior also indicates sexual dangerousness. *Id.* at 325.

## III.    Government's Sentencing Recommendation

The applicable Sentencing Guidelines range is 135--168 months of incarceration. Pursuant to the Rule 11(c)(1)(C) plea, the government requests that the Court sentence Ms. Hoppe to a low-end Guidelines sentence of 135 months of incarceration, followed by ten years of supervised release. This sentence recognizes the seriousness of Ms. Hoppe's conduct and ensures that she will be monitored for a significant period of time upon her release.

## IV.    The § 3553(a) Factors Support a Sentence of 151 Months of Incarceration.

### A.    Nature and Circumstances of the Offense

Ms. Hoppe's conduct was egregious. Over a period of several weeks, she communicated with a man whom she believed was sexually abusing his eight-year-old daughter. She encouraged him to engage in additional and more appalling abuse of this child – including urging him to penetrate his child both vaginally and anally. She gave the man directions to make the child think that such abuse was normal, stating that she would help him make the child 'come' so that the child would 'crave' him, and instructed the man to 'build up' her arrival so that the child would be

11

easier to manipulate. Ms. Hoppe's willingness to manipulate and influence a child into thinking that sexual abuse by her father was 'normal' shows a level of calculation and cruelty that certainly should be reflected in her sentence.

Moreover, Ms. Hoppe attempted to directly participate in the sexual abuse of the man's child. She arranged for him to bring the purported child to a hotel in Virginia so that she could begin 'training' the child, and then traveled to the hotel to meet them, equipped with lubricant and silk underwear in order to facilitate the planned abuse. She directed the man to begin abusing the child even before she arrived at the hotel, instructing him to "soap both [the child's] asshole and pussy" in preparation for her own anticipated sexual abuse of the child.

In addition to this conduct, Ms. Hoppe sent the man multiple images of child pornography and possessed additional material showing the sexual abuse of toddlers and prepubescent children, as well as children being abused while bound and gagged. The children captured in these videos and images were traumatized and victimized in the worst way imaginable at the time the material was created, and they are re-victimized and re-traumatized each and every time an individual, like Ms. Hoppe, views or shares the images for her own or others' sexual gratification. *See United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting 2012 Report at vii); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 at *4 (D.D.C. Oct. 15, 2018) (Howell, J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, J.) (same).

In addition, Ms. Hoppe's conduct demonstrates two of the aggravating factors outlined by the U.S. Sentencing Commission in its 2012 and 2021 reports: community and conduct. First, with respect to community, Ms. Hoppe engaged in multiple communities promoting the sexual abuse of children. In addition to her involvement with the "taboo parenting" group on the fetish website where she met the UC, the forensic review of Ms. Hoppe's cell phone showed that she was also involved in Kik groups dedicated to exchanging child pornography and, as noted above, she engaged in multiple conversations with individuals in these groups about grooming and sexually abusing children. Second, Ms. Hoppe's conduct was not limited to merely trafficking in child pornography. She fully intended to sexually abuse an eight-year-old girl and took every step to make that abuse happen. Such behavior certainly indicates "sexual dangerousness" and falls within the 'conduct' aggravating factor recommended by the Sentencing Commission. *See* 2012 Report at 324-25.

Given the extremely serious nature of Ms. Hoppe's criminal conduct and, notably, the presence of multiple aggravating factors recognized by the Sentencing Commission, a sentence of 135 months of incarceration is appropriate.

B.    History and Characteristics of the Defendant

Ms. Hoppe has a prior arrest in 2019 for Undressing Where Prohibited, which was dismissed on appeal; she has no other criminal history aside from traffic infractions. ████████

███████████████████████████████████████████

██████████  ████████████████████████████████████

████████████████████████████████████████████

─────────────────────────

█ ██████████████████████████████

13

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████  In short, there is nothing in Ms. Hoppe's history or characteristics that would call for a variance below the guidelines range.

C.    Punishment, Deterrence, Protection, and Correction

The sentence imposed must reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public from further crimes of the defendant. The government's recommendation of 135 months of imprisonment and ten years of supervised release serves each of these goals.

As discussed above, the sexual exploitation of children—including the viewing, possession, and distribution of child pornography—has devastating consequences for the children depicted in these images and videos. Once they find their way onto the internet, images and videos

depicting the sexual abuse of a child will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade them for their own sexual gratification – just as Ms. Hoppe did here.

Furthermore, consumers of child pornography create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff*, 501 F.3d 250, 259–660 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children and deserve significant punishment.

Courts have also recognized the importance of deterrence in fashioning an appropriate sentence in child pornography cases. *See Osbourne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (affirming 108-month sentence in possession of child pornography case, which would "deter [the defendant] and others who may be inclined in doing similar kinds of things"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th

Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it."). The significant sentence recommended by the government accomplishes this goal of deterring both Ms. Hoppe and others from reoffending.

D.    Kinds of Sentences Available and the Need to Avoid Unwarranted Sentencing Disparities

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentencing disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between [ ]defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). Here, the U.S. Sentencing Commission's Judicial Sentencing Information shows that the average sentence length for individuals sentenced under U.S.S.G. § 2G2.2, with a final offense level of 33 and Criminal History Category I, was 96 months during Fiscal Years 2019—2023. The government's recommended sentence is higher than this average; however, a sentence of 135 months of incarceration takes into account Ms. Hoppe's additional – and more serious – criminal conduct: namely, her encouragement of the UC's sexual abuse of his eight-year-old daughter and her intent to join in that abuse. Given that Ms. Hoppe did not just share child pornography, but also sought to personally abuse a child, her conduct requires an even stricter sentence than that of the average individual convicted under this statute. Accordingly, there is no unwarranted disparity presented by the government's recommendation.

E.    <u>Restitution and Victim Impact Statements</u>

None of the victims identified in the images and videos distributed by Ms. Hoppe are seeking restitution or have submitted victim impact statements.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that Ms. Hoppe be sentenced to a term of incarceration of 135 months, followed by ten years of supervised release. Such a sentence contemplates not only the relevant guidelines range set forth for this offense, but also adequately reflects the factors as outlined in 18 U.S.C. Section 3553(a).


Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney

   */s/ Caroline Burrell*
Caroline Burrell
CA Bar No. 283687
Assistant United States Attorney
601 D. St N.W.
Washington, D.C. 20530
(202) 252-6950
 caroline.burrell@usdoj.gov